***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission. The Industrial Commission has jurisdiction over the parties and the subject matter of this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the Defendant-Employer and Plaintiff on June 10, 2002, and at all other times relevant to this claim.
3. The employer is self-insured and duly licensed and Gallagher-Bassett Services, Inc. is the servicing agent.
4. Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer on June 10, 2002, which was accepted as compensable by Defendants pursuant to a Form 60.
5. Plaintiff's injury, which is the subject of this claim, is a right foot injury.
6. Plaintiff's average weekly wage was $510.00, which yields a compensation rate of $340.00.
7. Plaintiff has not returned to work for the Defendant or any other employer.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, Plaintiff was 55 years old and had obtained a GED.
2. Plaintiff worked for IBM for 19 years and 5 months, and has performed factory and production work for her entire life. When Defendant bought out part of IBM, Plaintiff remained working in her production job.
3. Plaintiff sustained an admittedly compensable injury to her right foot on June 10, 2002. She was sent to Concentra Medical Centers, where Dr. Andrew P. Bush diagnosed her with a fracture of one or more metatarsal bones of the right foot.
4. At the time of injury, Plaintiff was working as a Production Specialist, which required her to stand 7-8 hours per day, travel throughout the racking area, and wear steel-toed shoes.
5. Immediately following her injury, Plaintiff was given work restrictions, which prevented any prolonged standing or walking and no squatting, kneeling, climbing or driving. No work was available within these restrictions.
6. On July 8, 2002, Plaintiff returned to Dr. Bush, who noted that Plaintiff's right foot fracture appeared to be healing very slowly. On July 17, 2002, Plaintiff underwent surgery on her right foot by Dr. Bush. On July 29, 2002, Dr. Bush released Plaintiff to return to work with the following restrictions: no repetitive lifting over 2 pounds, no prolonged standing or walking longer than 10 minutes, no pushing or pulling over 2 pounds of force, no squatting or kneeling, no climbing stairs or ladders, no driving, use of a brace, use of crutches 100% of the time and sitting 100% of the time. No work was available within these restrictions.
7. In August of 2002, Plaintiff began experiencing pain in various parts of her right foot, including the peroneal tendons, fifth metatarsal, first metatarsal, and second metatarsal. Plaintiff reported the pain in the various parts of her foot to Dr. Bush,
8. On August 22, 2002, Dr. Carroll Kratzer evaluated Plaintiff for left foot pain. Dr. Kratzer had previously treated Plaintiff for a non-work related left foot injury. Dr. Kratzer diagnosed left foot strain due to overuse. According to Dr. Kratzer, Plaintiff aggravated her previous left foot injury by walking more on the left foot with crutches and by overusing the left foot to compensate for the right foot fracture.
9. On November 1, 2002, Defendants contacted Plaintiff directly via mail and offered Plaintiff a part-time position. On November 5, 2002, Plaintiff, through her attorney, requested additional information regarding the job title, wages, hours, and job description for this position. On November 7, 2002, Defendants sent a letter stating that the position was a temporary, part-time clerical position in the control center. The job duties included checking reports for discrepancies and other information that would then be keyed into a system. The position would be approximately 80% sitting with the need to stand only when pulling reports from a nearby printer. Working hours were four hours per day, Monday through Friday.
10. Plaintiff has no experience doing clerical work, and her only experience with computers involves "wanding in" parts in the invoicing department of Sanmina. The evidence does not establish that the temporary, part-time clerical position tendered to Plaintiff is ordinarily available in the competitive job market or that other employers would hire Plaintiff to do this job.
11. On November 4, 2002, Dr. Bush modified Plaintiff's work restrictions by increasing her lifting limit from 5 pounds to 15 pounds, and by decreasing her sitting requirements from 100% of the time to 75% of the time.
12. On November 8, 2002, Dr. Bush noted that Plaintiff might be having difficulty with the prominence of the callus on the lateral aspect of the fifth metatarsal. Additionally, Dr. Bush specified that if Plaintiff were to try to return to work, she must be allowed to take a break every hour, as needed. On January 6, 2003, Plaintiff returned to Dr. Bush for a follow-up evaluation. Dr. Bush noted that Plaintiff was having difficulty with prolonged standing and other activities. Dr. Bush also noted that Plaintiff had tenderness over the second and third metatarsals, and along the fifth metatarsal. However, x-rays revealed that her fracture had healed.
13. On January 29, 2003, Defendants offered Plaintiff a modified inspector job. This job required standing, walking, and wearing safety shoes. On February 3, 2002, Plaintiff, through her attorney, requested that a job analysis of this position be done.
14. On February 10, 2003, Dr. Bush discharged Plaintiff from his care, and released Plaintiff to return to regular duty work. However, at the same time, Dr. Bush stated that Plaintiff might have some work restrictions, which should be addressed by an outside treating physician. This apparent contradiction is explained by the fact that on February 10, 2003, Dr. Bush was under the mistaken impression that Plaintiff had previously injured her right foot, and that her right foot pain was therefore due to a previous injury.
15. Plaintiff testified that she is unable to perform her regular duty work because she cannot stand for 7-8 hours per day, as required by her regular duty production specialist job. The Full Commission finds Plaintiff's testimony that she is unable to perform her regular duty work to be credible.
16. On May 13, 2003, Dr. Carroll Kratzer evaluated Plaintiff's right foot, and diagnosed Plaintiff with possible mild to moderate sympathetic response/complex regional pain syndrome. Dr. Kratzer prescribed Neurontin and Elavil to treat Plaintiff's sympathetic response. On June 24, 2003, Dr. Kratzer re-evaluated Plaintiff and noted that Plaintiff's symptoms were improving after having taken Neurontin and Elavil. Dr. Kratzer has recommended pain management to treat Plaintiff's sympathetic response/complex regional pain syndrome.
17. Dr. Bush testified that he might have missed the diagnosis of RSD or complex regional pain syndrome because he did not consider this diagnosis. Dr. Bush also testified that if Plaintiff was treated with and responded favorably to Neurontin or Elavil, then that increases the likelihood that Plaintiff was suffering from RSD or complex regional pain syndrome when he released Plaintiff from his care on February 10, 2003. Little weight is given to Dr. Bush's opinion that Plaintiff could return to regular duty work by February 10, 2003.
18. Based on the greater weight of the evidence, the Full Commission finds that Plaintiff developed RSD/complex regional pain syndrome in her right foot as a result of her compensable right foot fracture.
19. The temporary part-time clerical job offered to Plaintiff on November 1, 2002 did not constitute suitable employment. Plaintiff did not constructively refuse the modified inspector job offered on January 29, 2003 by requesting a job analysis.
 ***********
The foregoing stipulations and findings of fact result in the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to her right foot on June 10, 2002. Defendants accepted Plaintiff's claim as compensable on a Form 60 Agreement and has been paying compensation for total disability. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has not unjustifiably refused suitable employment. The November 1, 2002 temporary, part-time clerical job was not suitable to Plaintiff's training, experience and physical restrictions. Plaintiff's request for a job analysis for the modified inspector job offered on January 29, 2003 was reasonable and did not constitute constructive or actual refusal of suitable employment. N.C. Gen. Stat. § 97-32.
3. Due to the right foot injury she sustained on June 10, 2002, Plaintiff is incapable of earning the wages she was receiving at the time of her injury in the same or any other employment. N.C. Gen. Stat. § 97-2(9).
4. Plaintiff is entitled to ongoing temporary total disability compensation at the rate of $340.00 until such time as Plaintiff returns to suitable employment or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to receive all medical treatment that is reasonably required due to her admittedly compensable injury for so long as the medical treatment may effect a cure, give relief, or lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
6. Defendants' Form 24 should be denied. N.C. Gen. Stat. §97-18.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants' Form 24 application to terminate or suspend award is DENIED.
2. Defendants shall continue to pay Plaintiff total disability compensation in the amount of $340.00 per week until further order of the Commission.
3. Defendants shall pay for all medical expenses resulting from Plaintiff's compensable right foot injury, including pain management, so long as such treatment may effectuate a cure, give relief, or lessen Plaintiff's period of disability.
4. The previously approved attorney's fee of twenty-five percent (25%) for Plaintiff's attorney shall remain in effect and shall continue to be deducted from the weekly compensation due Plaintiff and paid directly to Plaintiff's attorney.
5. Defendants shall pay the costs, including an expert witness fee of $385.00 to Dr. Andrew P. Bush and $225.00 to Dr. Carroll D. Kratzer if not paid by prior order.
This the ___ day of July 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER